This is a contract case.
Birmingham News Company, Inc., a corporation, (Birmingham News) sued the law firm of Chamblee and Harris, and Carl E. Chamblee, Jr. and Donald R. Harris, Jr., individually, (Chamblee and Harris), for $9,000 plus interest and costs, claiming that this amount was due by written contract.
Thereafter, motions for summary judgment were filed by all parties, along with supporting affidavits and exhibits. Birmingham News asserted the following: In 1987, Birmingham News sued Hood Associates, Incorporated, and Bruce R. Hood, individually (Hood). Hood was represented by Chamblee and Harris. In 1988, Birmingham News and Hood, through counsel, entered into an agreement in which Birmingham News agreed to withhold taking judgment against Hood, pending Hood's resolution of an unrelated lawsuit in which Hood was the plaintiff. In return, the agreement stated that Hood would set aside $9,000 from the proceeds of the unrelated lawsuit as payment in full of the obligation made the basis of the lawsuit between Birmingham News and Hood. The agreement further read: "The sum shall be paid as soon after settlement or verdict as is reasonably possible, from the Fiduciary Account of Chamblee Harris directly to W.H. McGowen III, attorney for [Birmingham News]." The agreement was signed by Donald R. Harris, Jr., as attorney for Hood and by W.H. McGowen III, as attorney for Birmingham News.
Birmingham News further claimed that Chamblee and Harris thereafter settled the unrelated lawsuit for Hood in excess of $9,000, but failed to remit any funds to Birmingham News and, instead, remitted the monies to Hood. According to Birmingham News, it subsequently was awarded summary judgment against Hood. Hood later filed for bankruptcy, thereby voiding the judgment. In its affidavit, Birmingham News asserted that the breach by Chamblee and Harris of the agreement resulted in a loss to Birmingham News of $9,000.
Chamblee and Harris, in its motion for summary judgment, argued that neither the agreement nor a corresponding letter from Donald Harris, Jr., to W.H. McGowen III, was a contract because of the lack of consideration flowing from Birmingham News to Chamblee and Harris.
Following a hearing, the trial court granted summary judgment in favor of Chamblee and Harris and denied summary judgment to Birmingham News; hence, this appeal.
On appeal, Birmingham News challenges 1) whether a lawyer, authorized by statute to bind his client, can execute a written agreement to resolve pending litigation, can accept the benefits therefrom, can later refuse to honor the terms of that agreement, and can escape responsibility or liability for his actions; 2) whether Chamblee and Harris entered into a contract with Birmingham News, through its duly authorized attorneys of record; and 3) whether the failure of Chamblee and Harris to pay the funds to Birmingham News from the fiduciary account constitutes a breach of the agreement sufficient to impose personal liability on Chamblee and Harris for the unpaid amount.
Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Alabama Rules of Civil Procedure. If the moving party makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the opposing party to establish such a fact.Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635
(Ala. 1992). At this point, the non-moving party must present "substantial evidence" to defeat the movant's motion. Ala. Code 1975, § 12-21-12(a) (1992 Cum.Supp.). "Substantial evidence" is defined *Page 691 
as " 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' "Gossett at 638. (Citation omitted.) Since this case involves the grant of a motion for summary judgment, no presumption of correctness attaches to the decision of the trial court and our review is de novo. Gossett, supra. Furthermore, our review of the record must be in a light most favorable to the non-movant and we must resolve all reasonable doubts against the movant.Rhodes v. Alabama Power Co., 599 So.2d 27 (Ala. 1992).
In its brief, Birmingham News asserts: "There were no disputed facts for determination by the trial judge and the trial judge's decision was based on existing law as it relates to contracts and assignments." Birmingham News continues, however, by classifying this as a case of first impression, and urging this court "to establish a basic principle to guide future dealings among lawyers in Alabama." To support its position, Birmingham News cites Starke Moore v. Kenan,11 Ala. 818 (1847), and Rosenbaum v. State, 33 Ala. 354 (1859), for the proposition, as stated in its brief, that "law as well as sound policy and good morals requires that courts should enforce such agreements of counsel as authorized by Alabama Code Section 34-3-21."
In its brief, Birmingham News states that "[s]tatutory mandate and Alabama case law do not allow agreements between lawyers to be set aside upon any lower grounds than would warrant a rescission of a contract — namely: fraud, collusion, accident, surprise, or some ground of the same nature. Ex parteHayes, 92 Ala. 120 [9 So. 156] (1891)." Accordingly, Birmingham News requests that we not allow Chamblee and Harris to set aside the agreement unilaterally, since courts cannot set aside these types of agreements.
Birmingham News seems to argue initially that since lawyers can execute legally binding agreements for their clients under the authority of Ala. Code 1975, § 34-3-21, and since these agreements are enforceable against the clients, we should create a new rule of law which extends liability to the clients' lawyers. This we decline to do. Instead, any imputation of liability to Chamblee and Harris must be grounded in existing law.
Along these lines is the case of Gayle Saffold v. Benson,3 Ala. 234 (1841), which Birmingham News also cited in its brief. In Gayle, supra, the issue was whether an assignee of a judgment could maintain an action against the attorneys of the plaintiff in the judgment following notice of the assignment and receipt of the money. Our Supreme Court stated the following:
 "The assignment of the judgment was a transfer of the money to be collected on it; it was an absolute and unconditional appropriation of it to the assignee. The money, when collected by the attorney, was the property of the assignee, and held for his use, and we can perceive no reason why he should not be allowed to maintain this action to recover it after demand made, notice of the assignment of the judgment, having previously been given. . . . [A]n attorney at law, is the agent of the party, and the principal may appropriate money in his hands to the use of another, after notice of which, if he pays it to the principal like any other agent, he will be responsible to the person to whom the fund really belongs, in an action for money had and received, founded on the implied promise."
Gayle at 235-36.
Also, our research has revealed that a situation similar to the one in the present case was addressed by the Court of Appeals of Idaho in Bonanza Motors, Inc. v. Webb, 104 Idaho 234, 657 P.2d 1102 (Ct.App. 1983). There, a law firm obtained a judgment for its client in a lawsuit against an insurance company. Also, the client owed money to a creditor, Bonanza Motors, on a past-due promissory note. In order to avoid a judgment on the note, the client gave Bonanza Motors a partial assignment of his interest in the monies to be received from the lawsuit against the insurance company. The assignment instrument directed the law firm to pay Bonanza Motors directly upon receipt of the monies. Later, *Page 692 
the monies arrived in the form of a draft which was payable jointly to the law firm and the client. After paying the law firm for its services, the client requested the law firm to endorse the draft. The law firm did so and relinquished the draft. The client negotiated the draft and did not pay Bonanza Motors. Following the grant of summary judgment for Bonanza Motors against the law firm, the law firm appealed. BonanzaMotors, supra.
In affirming summary judgment in favor of Bonanza Motors, the Court of Appeals of Idaho stated the following:
 "Notice of an assignment puts the obligor on guard. The obligor is liable to the assignee if the funds assigned are subsequently paid to the assignor in violation of the assignment. Once a valid assignment has been made, the assignor cannot cancel or modify the assignment by unilateral action without the assent of the assignee; nor may he defeat the rights of the assignee. After notice of the assignment has been given to the obligor, the assignor has no remaining power of release. In the present case, the client acted unilaterally in requesting that the draft be endorsed and delivered to him. The record discloses no contention that the creditor had consented to such treatment of the funds assigned. Accordingly, we hold that the client's request did not absolve the obligor law firm of its contractual duty to honor the assignment."
Bonanza Motors, 104 Idaho at 236, 657 P.2d at 1104. (Citations omitted.)
Based on Gayle, supra, and the principle stated in BonanzaMotors, supra, we find the dispositive issue in the present case to be whether the agreement constituted an assignment.
In Baker v. Eufaula Concrete Co., 557 So.2d 1228 (Ala. 1990), on remand sub nom., Baker v. Blue Circle, Inc., 585 So.2d 868
(Ala. 1991), our Supreme Court stated:
 " 'The general rule is that, in order to work an assignment of a chose in action, or contract . . ., there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the . . . subject matter of the contract. If this is done, the transaction is an assignment; otherwise not. It is further held that what amounts to a present appropriation, which constitutes an assignment, is a question of intention to be gathered from all the language, construed in the light of attendant circumstances. Where the transaction is evidenced by a written agreement or stipulation in writing, it depends upon the intention of the parties as manifested in the writing, and construed in the light of such extrinsic circumstances as, under the general rules of law, are admissible in aid of the interpretation of written instrument.' "
Baker, 557 So.2d at 1229. (Citations omitted.)
Our Supreme Court further stated:
 "There is no requirement that magical words be used to accomplish an assignment, and an assignment may be written, parol, or otherwise. Courts look to substance rather than form. The test . . . is whether the purported assignor intended to transfer a present interest in the subject matter of the contract. This is a question of fact to be determined under the attendant circumstances."
Baker, 557 So.2d at 1230. (Citation omitted.) (Emphasis added.)
Since the dispositive issue in this case is, according toBaker, supra, a question of fact, we hold that the grant of summary judgment in favor of Chamblee and Harris was improper. We recognize that, in its order, the trial court stated that "there was no assignment as contemplated in Gayle." We also note, however, that the scant record on appeal contains virtually nothing more than the pleadings, motions for summary judgment along with supporting affidavits, and the trial court's orders. Such an appraisal of the agreement by the trial court appears to be a conclusion of law and not of fact, as mandated by Baker, supra. We reverse and remand, therefore, to allow the trial court the opportunity to more fully develop the facts surrounding the agreement *Page 693 
and to more fully consider the dispositive issue, based on the standards set forth herein. Specifically, if the trial court, as the trier of fact, finds that Hood assigned the monies to Birmingham News, then Chamblee and Harris are liable to Birmingham News for not paying in accordance with the agreement. If it is found, however, that there was no assignment, Birmingham News has no recourse against Chamblee and Harris.
Accordingly, the trial court's grant of summary judgment in favor of Chamblee and Harris is due to be, and it is hereby, reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and RUSSELL, J., concur.